# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD UTTER, | : | NO. 4:23-CV-01302 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| FRANK BISIGNANO,[1] | : | |
| *Commissioner of Social Security*, | : | |
| Defendant | : | |

## MEMORANDUM OPINION

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Richard Utter's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Complaint, Doc. 1 at 1. The matter has been referred to the undersigned United States Magistrate Judge for all further proceedings pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is ordered that the Commissioner's decision be **VACATED and REMANDED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On October 5, 2016, Plaintiff Richard Utter filed an application for Title XVI benefits. Transcript, Doc. 9-2 at 18. In this application, Utter claimed disability beginning June 1, 2004. *Id*. The Social Security Administration initially denied Utter's claim, and an Administrative Law Judge ("ALJ") denied his claim on January 28, 2019. Doc. 9-4 at 2; Doc. 9-3 at 19. The Appeals Council vacated and remanded the claim, and a second hearing was held before ALJ Michelle Wolf on September 14, 2021. Doc 9-3 at 43; Doc. 9-2 at 54.

In a written opinion dated February 28, 2022, the ALJ found that Richard Utter was disabled as of January 19, 2019, but not disabled prior to that time, and therefore not entitled to the full benefits sought. Doc. 9-2. at 41–42. Utter appealed the ALJ's decision to the Appeals Council, which on June 8, 2023, denied Utter's request for review. *Id*. at 2. On August 4, 2023, Utter filed the instant action. Doc. 1. The Commissioner

responded on September 29, 2023, providing the requisite transcripts from the disability proceedings on September 14, 2021, and October 9, 2018. Answer, Doc. 8 at 1; Doc. 9-2 at 52–119. The parties then filed their respective briefs (Pl.'s Br., Doc. 12; Def.'s Br., Doc. 18; Pl.'s Reply Br., Doc. 21), with Utter alleging that three errors warranted reversal or remand. Doc. 12 at 5, 17.

II.    The ALJ's Decision

In a decision dated February 28, 2022, the ALJ determined Utter "was not disabled prior to January 19, 2019, but became disabled on that date and has continued to be disabled through the date of this decision." Doc. 9-2 at 41–42. The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 416.920(a)(1).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20

C.F.R. § 416.972. The ALJ determined that Utter "has not engaged in [SGA] since the application date, October 5, 2016." Doc. 9-2 at 20. Thus, the ALJ's analysis proceeded to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] do[es] not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found that Utter has the following severe impairments: cervical degenerative disc disease with osteomyelitis and cervical spondylolisthesis, lumbar degenerative disc disease status post fusion, thoracic bulges, carotid artery stenosis status post stenting, history of cerebral vascular accident, pain syndrome, status post right knee arthroscopy, status post left knee arthroscopy with partial meniscectomy

and synovectomy with debridement and chondroplasty, status post open reduction internal fixation (ORIF) for left clavicle fracture, and status post left shoulder arthroscopy. Doc. 9-2 at 20. The ALJ also identified Utter's non-severe impairments as: hyperlipidemia, dyslipidemia, hypertension, hypothyroidism, hyperkalemia, pharyngitis, laryngitis, stricture of esophagus, gastroesophageal reflux disease (GERD), pneumonitis, acute kidney injury, QTc prolongation, tachycardia, allergic urticarial, history of Hodgkin's lymphoma, diabetes mellitus/prediabetes, alcohol withdrawal, nicotine dependence, substance abuse, adjustment disorder, and anxiety. *Id* at 20–21.

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. *Id*. The ALJ determined that none of Utter's impairments, considered individually or in combination, met or equaled a Listing. Doc. 9-2 at 24. Specifically, the ALJ considered Listings: 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root); 1.16 (lumbar

spinal stenosis resulting in compromise of the cauda equina); 1.18, abnormality of a major joint(s) in any extremity; 1.23 (non-healing or complex fracture of an upper extremity); 4.04 (ischemic heart disease, with symptoms due to myocardial ischemia); 11.04 (sensory or motor aphasia); 1.00 (inability to ambulate effectively). *Id.* at 25–27.

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. 20 C.F.R. § 416.920(a)(4). The ALJ determined that: since October 5, 2016, through January 1, 2017, Utter had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that he could occasionally balance, stoop, crouch, crawl, kneel, and climb, but not climb ladders, ropes, or scaffolds. Doc. 9-2 at 28. From January 2, 2017, through January 18, 2017, as well as the date of the ALJ's decision, Utter had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that he could occasionally balance, stoop, crouch, crawl, kneel, and climb, but not on ladders, ropes, or scaffolds. *Id.*

At step four, after assessing a claimant's RFC, the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). A

finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. *Id*. Past relevant work is defined as work the claimant has done within the past five years, that was SGA, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1)(i). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis may proceed to the fifth step. *See* 20 C.F.R. § 416.960(a)(4), (h). Prior to the established onset date, Utter had no prior relevant work, therefore no skills transferred within the RFC. Doc. 9-2 at 39.

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. *Id.*

The ALJ made a vocational determination that prior to January 19, 2019, Utter was a younger individual age 45-49, as defined by the Regulations. 20 C.F.R. § 416.963; Doc. 9-2 at 39. The ALJ also noted that Utter "has a high school education." Doc. 9-2 at 39. The ALJ then determined that "Prior to January 19, 2019, considering the claimant's

age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Utter could have performed (20 C.F.R. §§ 416.969 and 416.969a)." *Id.* The ALJ specifically identified occupations of cashier, office helper, sorter, label maker, order clerk, and scanner. *Id.* at 40–41. As a result of this analysis, the ALJ determined that Utter was not disabled prior to January 19, 2019, and denied Utter's application for benefits for that period. *Id.* at 41.

III.   STANDARD OF REVIEW

In order to receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any SGA by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other SGA that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being

supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Mr. Utter was disabled, but whether the Commissioner's finding that Mr. Utter was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

IV.    DISCUSSION

    A.    THE ALJ ERRED IN HER EVALUATION OF OPINION EVIDENCE

The claimant, Mr. Utter, alleges that the ALJ made three main errors in her decision to deny him disability benefits for the period before January 19, 2019. Doc. 12 at 5. First, the claimant asserts that the ALJ erroneously dismissed his mental impairments as not severe. *Id*. Second, the claimant maintains that the ALJ improperly rejected the treating physician's opinion. *Id*. Third, the claimant argues that the ALJ failed to present an accurate hypothetical question to the vocational expert regarding occupations that he could hold because the ALJ failed to assign appropriate weight to the opinion of the treating physician. *Id*. After a careful review of the record, the Court finds that: 1) the ALJ's determination that Utter's mental impairments were not severe is supported by substantial evidence; 2) the ALJ erred by not applying the proper test to weigh Dr. El Khashab's opinion; and 3) the ALJ's failure to appropriately weigh Dr. El Khashab's opinion may have impacted her determination that Utter was not disabled prior to January 19, 2019.

1.    THE ALJ'S DETERMINATION THAT UTTER'S MENTAL
IMPAIRMENTS ARE NOT SEVERE IS SUPPORTED BY
SUBSTANTIAL EVIDENCE

The ALJ's determination that Utter's mental impairments are not severe is supported by substantial evidence. In making her decision, the ALJ applied the "paragraph B" criteria for evaluating mental disorders outlined by the disability regulations. 20 CFR, Part 404, Subpart P, Appendix 1. She evaluated the four functional areas of mental functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. *Id.* at Part A Sec.11.00 G(3)(b). The ALJ then evaluated mental health records for the relevant period and concluded that Utter's medically determinable mental impairments are non-severe because they caused "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." Doc. 9-2 at 24. Therefore, the ALJ's determination that Utter's mental impairments are not severe is supported by substantial evidence.

2.    THE ALJ ERRED BY NOT APPLYING THE PRE-MARCH 2017 FACTOR TEST

The ALJ erred by not applying the pre-March 2017 "treating physician rule" test. For claims filed before March 27, 2017, ALJs are required to apply the Social Security Regulations' pre-2017 rules to assess the opinion of a treating physician. 20 C.F.R. § 416.927; *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 279-80 (M.D. Pa. 2022) (explaining the treating source rule's applicability to cases filed before March 2017); *see also Myers v. Berryhill*, 373 F. Supp. 3d 528, 535 (M.D. Pa. 2019) (discussing the applicability of 20 C.F.R. § 416.927 (treating physician rule) to a claim filed prior to March 2017). This is commonly referred to as the treating physician or treating source rule. *Dorf v. Bowen*, 794 F.2d 896 (3d Cir. 1986); *see also Mason*, 994 F.2d at 1067 (affirming the treating physician rule requires a court to give greater weight to the findings of a treating physician than to those of a physician who has examined the claimant only once or not at all). A treating source is an acceptable medical source who has an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.927(a)(2). The rule requires ALJs to give the opinion of a treating physician controlling weight if the opinion is well-supported by objective medical evidence and

not inconsistent with substantial evidence in the record. 20 C.F.R. § 416.927 (c)(2); *see Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

However, if a conflict exists between the opinion of a treating source and another medical source, an ALJ can accept, reject, or weigh each opinion, so long as "good reasons" are provided for doing so. 20 C.F.R. § 416.927(c)(2). Whenever an ALJ provides a judgment on the weight to give the opinion of a treating source, the ALJ must also provide "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). This is to allow for meaningful judicial review. *Burnett v. Comm'r Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). The Social Security Regulations instruct that:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at 4 (1996). An ALJ must weigh *all*

the factors provided for in the test, including 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) supportability of opinion from medical tests; 4) consistency with other evidence in the record; 5) specialization; and 6) any other relevant factors. 20 C.F.R. § 416.927(c)(2)(i)–(ii), (c)(3)–(6).

Although an ALJ need not cite each factor considered in the test, "it must still provide some written explanation for the assignment of weight". *Brennan v. Colvin*, No. 15-1176, 2016 WL 7107235, at *12 (M.D. Pa. Sept. 14, 2016), *report and recommendation adopted*, No. 15-1176, 2016 WL 7049029 (M.D. Pa. Dec. 5, 2016); SSR 06-03p, 2006 WL 2329939, at *1 (2006). Additionally, an ALJ must "ensure that the discussion of the evidence in the determination or decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2).

The new test abandons the former factor test that deferentially placed treating physicians' opinions above others, in favor of a general factor test that values all physicians' opinions equally. *Mercado*, 629 F.

Supp. 3d at 79–80. The new and former test share common factors, such as "supportability" from objective medical evidence and "consistency" with other medical evidence provided in the record. 20 CFR §§ 416.920c(c), 416.927(c).

In the instant case, although the initial hearing took place in October 2018, Utter filed his claim on October 5, 2016, before March 27, 2017. Doc. 9-2 at 94, 18. Therefore, the ALJ should have applied the pre-2017 treating physician factor test outlined in 20 C.F.R. § 416.927(c)(2)(i)–(ii), (c)(3)–(6). However, the ALJ failed to do so and seemed to apply the new test, which weighs all physicians' opinions equally, instead. Doc. 9-2 at 35–36. The treating physician rule changed between the date Utter filed his claim and that of the initial hearing. *See* 20 C.F.R. § 416.920c. Thus, it is plausible that the ALJ wrongfully applied the new test rather than the prior test to weigh Dr. El Khashab's opinion because of the proximity in time between the date of the rule change and that of the hearing. The ALJ articulated no facts in her decision to enable this court to determine that she used the appropriate former test to weigh Dr. El Khashab's opinion.

Because the ALJ's decision came shortly after the change in test for weighing treating physicians' opinions and the ALJ failed to articulate her application of the former treating physician test to Dr. El Khashab's opinion, this Court is led to conclude that the ALJ did not correctly apply the law to the facts of this case. Therefore, the ALJ's decision was not supported by substantial evidence. The ALJ failed to articulate that her decision to grant Dr. El Khashab's opinion little weight was supported by substantial evidence in two significant aspects: i) by not acknowledging Dr. El Khashab as the treating physician; and ii) not employing the former factor test. Moreover, the Commissioner's arguments fail to convince the Court otherwise.

### i.   THE ALJ NEVER ACKNOWLEDGED DR. EL KHASHAB AS THE TREATING PHYSICIAN

The ALJ explicitly acknowledged the statuses of other health care professionals before assessing their opinions but did not explicitly acknowledge or note anywhere that Dr. El Khashab was a treating physician before discussing his opinion. For example, the ALJ used terms such as "consultative psychological examiner," "state agency medical consultant," and "consultative medical examiner" to contextualize her evaluation of the opinions of various health care providers. Doc. 9-2 at

36–39. However, when referring to Dr. El Khashab, such specificity was conspicuously absent. The ALJ merely referred to Dr. El Khashab as "Mostafa El Khashab, M.D." or "Dr. El Khashab". *Id*. at 35–36. Thus, her opinion provided no indication that she recognized Dr. El Khashab as the treating physician.

### ii.    THE ALJ NEVER EMPLOYED THE FACTOR TEST

Nowhere in her decision did the ALJ apply or articulate that she applied the required multi-factor test when explaining the weight she gave to Dr. El Khashab's opinion. An ALJ need not "use particular language or adhere to a particular format in conducting [their] analysis", if they desire to accord a treating physician's opinion no weight. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). However, the ALJ must provide an explanation that includes "good reasons for the weight . . . given to the treating source's opinion" and allows for "meaningful review." *Brennan*, 2016 WL 7107235, at *12. In *Brennan v. Colvin,* the ALJ acknowledged the doctor as the "treating family osteopath" of the claimant and included other relevant factors in its analysis to explain why it accorded the opinion no weight. *Id*. Thus, it was clear to the

reviewing court that the ALJ properly considered the opinion of the doctor as that of a treating physician. *Id*.

To be affirmed on appeal, an ALJ's "determination as to the status of a claim requires the correct application of the law to the facts[,] . . . supported by substantial evidence" *Burton*, 512 F. Supp. at 914. Moreover, "it has been held that an ALJ's errors of law denote a lack of substantial evidence." *Arnold*, 2014 WL 940205, at *1. The Third Circuit instructs that "[w]here detailed regulations prescribe the process an ALJ must follow in determining how much weight to give particular evidence, the Court can and should remand for further proceedings if the ALJ failed to follow these procedures." *See Morales*, 225 F.3d at 319.

Here, although the ALJ offered a few reasons for affording Dr. El Khashab's opinion little weight, it is not clear that she applied the appropriate test. She considered only two of the six factors in the test. Doc. 9-2 at 35–36. The ALJ maintained that Dr. El Khashab's opinion was 1) inconsistent with his treatment notes; and 2) in conflict with other doctors' opinions.[2] *Id*. But those two factors are present in both the old

_____

[2] The ALJ also noted that Dr. El Khashab's opinion was provided less than twelve months from the claimant's protected filing date and a
*(footnote continued on next page)*

factor test and the new one, so it is not clear which test the ALJ applied. *See* 20 CFR §§ 416.920c(c), 416.927(c). The ALJ also did not offer any further explanation that would lead a reviewing court to understand that she considered the remaining factors in the test. The ALJ never explicitly or implicitly indicated that she applied the factor test. Therefore, the Court must conclude that the ALJ did not do so.

Furthermore, the ALJ's failure to indicate anywhere in her decision that she was applying the treating physician test stands out in comparison to her application of a different test. As stated above, the ALJ employed the "paragraph B" factors to assess Utter's mental disorders claim. Doc. 9-2 at 23–24. In her decision, she expressly stated the Social Security Regulation she based her decision on and thoroughly explained

_____

few months after his cervical surgery. Doc. 9-2 at 36. Further, she found that the claimant's reported activities of daily living, such as personal care, cooking, cleaning, doing laundry, handling money and paying bills, attending doctor's appointments, etc., implied that he had fewer limitations than Dr. El Khashab claimed. *Id.* The ALJ did not explain why the proximity in time to the filing date or the surgery led her to devalue the treating doctor's opinion. Additionally, in discounting Dr. El Khashab's opinion, the ALJ noted, without explanation, that the record failed to support certain limitations before January 2, 2017. *Id.* The opinion at issue was provided in August of 2017, so the relevance of Utter's ability to stand and walk with "mostly normal gait from September 2016 through January 1, 2017" is not readily evident. *Id.*

how the facts in Utter's case failed to satisfy each element of the mental

disorders test. *Id.* The ALJ explained her determination saying:

> In making this finding, the undersigned has considered the
> broad functional areas of mental functioning set out in the
> disability regulations for evaluating mental disorders and in
> the Listing of Impairments (20 CFR, Part 404, Subpart P,
> Appendix 1). These four broad functional areas are known as
> the "paragraph B" criteria, which are fully described below in
> conjunction with the claimant's severe mental impairments.

*Id.* at 23. Just as the ALJ was able to unambiguously state the test she

was using with respect to the claimant's mental disorders and thoroughly

explain how the claimant's situation fell short of the requirement, the

ALJ would likely also have mentioned and explained the treating

physician factor test if she did indeed apply it. That she did not do so, and

did not cite the pre-2017 regulation setting forth the treating physician

rule, indicates that she did not apply the appropriate test.

### iii. THE COMMISSIONER'S REBUTTAL IS UNPERSUASIVE

The Commissioner's rebuttal that the ALJ did, in fact, analyze the

opinion of Dr. El Khashab as the treating physician, does not persuade

the Court. The Commissioner admits that Dr. El Khashab is a treating

physician and argues that it was clear that the ALJ knew and analyzed

Dr. El Khashab's opinion as such. Doc. 18 at 38–39. The Commissioner

maintains that this is evident because the ALJ "discuss[ed] Dr. El Khashab's treatment notes when summarizing Plaintiff's treatment, discussing 'neurosurgery records', 'neurosurgery encounter[s]', and the cervical laminectomy notes all belonging to Dr. El Khashab." *Id.*

However, under the Social Security Regulations, an ALJ is required to clearly analyze a treating physician's opinion using the factor test in such a way that a reviewing court can "follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2). The ALJ's reference to Dr. El Khashab's treatment notes does not clearly demonstrate that she applied the proper factor test as opposed to merely weighing the opinion in the way she would that of a non-treating physician.[3] Because the ALJ failed to either manifestly apply the treating physician factor test or articulate that she was

_____

[3] The record clearly reflects that Dr. El Khashab was a treating physician. During the September 14, 2021, hearing, the claimant's attorney notified the ALJ that Dr. El Khashab was a treating physician. Doc. 9-2 at 86. Additionally, in a September 21, 2021, letter to the ALJ, sent prior to the release of the ALJ's final decision, Utter's attorney called Dr. El Khashab the "treating neurosurgeon" and asked the ALJ to assign his opinion "great or controlling weight pursuant to the applicable regulations at 20 C.F.R. § 416.927." Doc. 9-6 at 74.

analyzing Dr. El Khashab's opinion as that of a treating physician, her decision was not supported by substantial evidence from the record.

> 3.    THE ALJ'S MISTREATMENT OF DR. EL KHASHAB'S OPINION POTENTIALLY IMPACTED HER HYPOTHETICAL QUESTION AND DISABILITY DETERMINATION

Finally, the ALJ's failure to recognize or analyze Dr. El Khashab's opinion as that of a treating physician may have determined the outcome of the case. The ALJ's rejection of Dr. El Khashab's opinion resulted in a finding that Utter was not disabled. During the October 2018 hearing, the ALJ proffered hypothetical questions to the vocational expert to determine whether Utter could perform any jobs based on the limitations the ALJ believed he suffered from. Doc. 9-2 at 113–116. The vocational expert answered that there were several jobs that someone with Utter's limitations could perform, such as counter clerk, retail marker, mail clerk, document preparer, ticket checker, and addressing clerk. *Id*. The ALJ's hypotheticals were all based on evidence from the record and the medical opinions to which she granted substantial weight. *See Id*. She excluded most of the limitations opined on by Dr. El Khashab from her hypotheticals. *See Id*. Then again in the September 2021 hearing, the ALJ gave a different vocational expert hypotheticals based on the same

limitations, and that expert testified that there were jobs in the national economy that someone in Utter's position could perform, like cashier, office helper, sorter, label maker, order clerk, and scanner. Doc 9-2 at 83–85.

However, when Utter's attorney asked the vocational experts different hypotheticals that did include the limitations Dr. El Khashab noted, the vocational experts testified that, under those circumstances, Utter would likely not find any jobs that exist in significant numbers in the national economy that he could perform.[4] Doc. 9-2 at 85–86, 117.

_____

[4] During the October 2018 hearing, Utter's attorney's examination of the vocational expert went as follows:

> Q: If the individual can sit for a maximum of four hours in an eight-hour workday and stand or walk a maximum — combined a maximum of three hours in an eight-hour workday, can that individual perform work on a full-time basis?
> A: That is not consistent with full-time gainful employment.
> Q: If a hypothetical individual were absent from work more than four times a month, would that be acceptable for any of these jobs or any jobs in the National Economy?
> A: Based upon my experience, with that level of absenteeism an individual would have difficulty sustaining employment.

Doc. 9-2 at 117.

*(footnote continued on next page)*

During the October 2018 hearing, after Utter's attorney furnished hypotheticals founded on Dr. El Khashab's opinion, the first vocational expert opined that someone with Utter's limitations would "have

---

During the September 2021 hearing, Utter's attorney's examination of the second vocational expert unfolded as follows:

> Q: . . . If an individual was limited to either sedentary or light exertion has to, because of medical impairments, take unscheduled break – breaks four times a day lasting 30 minutes, can that individual do any of these jobs or any other work in the National Economy?
> A: No, that would preclude all work.
> Q: Okay. If within the sedentary and light exertional range an individual, for medical reasons, is missing work more than four times per month, would any of these jobs or any other jobs be able to be performed?
> A: No, that would preclude all work.
> . . .
> Q: If an individual because of their medical impairments, and specifically the pain that they cause, is frequently having interference with attention and concentration required to perform simple work-related tasks, can the individual do any of these jobs or any other jobs in the National Economy?
> A: No.
> ATTY: I don't believe I have further questions for [the vocational expert], Your Honor.
> . . .
> ATTY: And I believe that my questions are grounded in the opinion of Dr. El Khashab, who is the treating orthopedic surgeon.

*Id*. at 85–86.

difficulty sustaining employment." *Id*. at 117. During the second hearing in September 2021, a different vocational expert agreed with the first expert, testifying that the limitations Dr. El Khashab opined on would "preclude all work." *Id*. at 85—86. Therefore, the weight the ALJ assigned to the opinion of Dr. El Khashab changed the vocational experts' conclusions about whether Utter could work, and thus the ALJ's determination regarding his disability prior to January 19, 2019.

V.    REMEDY

The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales*, 225 F.3d at 320; *see generally Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Because the ALJ failed to articulate that she adhered to detailed

regulations regarding the process an ALJ must follow when weighing a treating physician's opinion in a claim filed before March 2017, this Court will order that the decision of the Commissioner be vacated. *See Morales*, 225 F.3d at 319. Further, it will be ordered that the case be remanded for 1) a discussion of the evidence; 2) an adequate explanation supporting the weight to grant Dr. El Khashab's opinion under the appropriate test; and 3) a new determination of Utter's disability status prior to January 19, 2019, in accordance with this opinion.

VI.   <u>CONCLUSION</u>

Based on the foregoing, it is **ORDERED** that the Commissioner's decision be **VACATED** and that the case be **REMANDED** to the Commissioner to fully develop the record and appropriately evaluate the evidence pursuant to sentence four of 42 U.S.C. § 405(g). It is ordered that this case is **CLOSED**.

An appropriate Order follows.


Dated: October 6, 2025                     *s/ Sean A. Camoni*
                                           Sean A. Camoni
                                           United States Magistrate Judge